# EXHIBIT "A"

Case 8:21-cv-01593-CJC-DFM   Document 1-2   Filed 09/28/21   Page 2 of 20   Page ID #:8
Electronically Filed by Superior Court of California, County of Orange, 08/19/2021 11:37:22 AM.
30-2021-01216844-CU-BT-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Katie Trent, Deputy Clerk.

GRAHAM & ASSOCIATES LLP
Anthony G. Graham (State Bar No. 148682)
2901 West Coast Highway, Suite 200
Newport Beach, CA 92663
Tel. (949) 270-2792
anthonyggraham@msn.com

Attorneys for Plaintiff
BRUCE PUTERBAUGH

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF ORANGE

| | |
|---|---|
| BRUCE PUTERBAUGH,<br><br>Plaintiff,<br><br>vs.<br><br>OORAH, INC.; KARS4KIDS; J.O.Y OF OUR YOUTH AND DOES 1-50,<br><br>Defendants. | CASE NO. 30-2021-01216844-CU-BT-CJC<br><br>**Assigned for All Purposes**<br>Judge John C. Gastelum<br>COMPLAINT FOR:<br><br>VIOLATIONS OF BUSINESS & PROFESSIONS CODE 17200. |

As and for his causes of action against defendants OORAH, INC.; KARS4KIDS; J.O.Y OF OUR YOUTH AND DOES 1-50 (hereinafter referred to collectively as "KARS4KIDS"), which are entities doing business throughout California, Plaintiff BRUCE PUTERBAUGH alleges as follows:

**GENERAL ALLEGATIONS**

1. All allegations in this Complaint are based upon information and belief except for those allegations which pertain to the Plaintiff named herein. Plaintiffs' information and belief are based upon, *inter alia*, the investigation conducted to date by Plaintiff. Each allegation in

PRINTED ON
RECYCLED PAPER

1

this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

2. This action is brought pursuant to California Code of Civil Procedure §382, California Civil Code §1781 et seq., and California Business and Professions Code §17200 et seq. The Individual and Representative Plaintiff brings this action on her own behalf, and on behalf of all person(s) who suffered damages as a result of the wrongdoing as alleged below. Plaintiff further brings this action on her own behalf, on behalf of all persons within the class as defined herein, and as a private attorneys general on behalf of the general public, and in the public interest.

## THE PARTIES

4. Defendants OORAH, INC.; KARS4KIDS; J.O.Y OF OUR YOUTH AND DOES 1-50 (hereinafter referred to collectively as "KARS4KIDS") are and at all times mentioned herein have been doing business in the State of California. OORAH, INC. is a New jersey corporation doing business throughout California. KARS4KIDS and J.O.Y OF OUR YOUTH are intimately connected entities apparently acting as "charities' for tax purposes for the benefit of Oorah, Inc..

5. Plaintiff is ignorant of the true names and capacities of defendants sued as DOES 1- 50, inclusive, and therefore sue these defendants by such fictitious names. The fictitious defendants named in this Complaint are sued pursuant to the provisions of C.C.P. § 474. Plaintiff is informed and believes, and upon that ground, alleges that each fictitious defendant is in some way responsible for, participated in, or contributed to the matters and things of which Plaintiff complains herein, and in some fashion, has legal responsibility therefor. When the exact nature and identity of such fictitious defendants' responsibility for, participation in, and

PRINTED ON RECYCLED PAPER

contribution to the matters and things alleged herein are ascertained by Plaintiff, Plaintiff will seek to amend this Complaint and all proceedings herein to set forth the same.

6. At all times mentioned defendants were each a person within the meaning of Business & Professions Code § 17201 and a person doing business within the meaning of Health & Safety Code § 25249.11 (a). Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, defendants have 10 or more employees.

## SUMMARY OF ALLEGATIONS

7. Plaintiff in response to the ubiquitous television commercials decided to donate his 2001 Volvo to KARS4KIDS because he believed, as do so many millions of others, that the "charity" actually did what it purports to do – provide moneys for disadvantaged children throughout America.

8. After he contacted KARS4KIDS he was told to deal with Auction Dealer Services, LLC, who themselves then put him in tough with their "partner" Copart to schedule a pickup.

9. On July 8, 2021 Plaintiffs' car was picked up by the dealer and he received a receipt for $500 to use as a tax deduction, which is a major selling point for Defendants. This custom and practice effectively exposes Defendants for what they really are, an unlicensed used car dealership business. Vehicle Code § 286 provides an exemption to nonprofits from state dealer licensing requirements only if vehicles are donated. By effectively offering cash for the donated vehicles, Defendants were and are running an unlicensed used car business in violation of California law.

10. Subsequently, Plaintiff discovered a number of facts which Defendants do not mention in their ads.

     a.    Kars4Kids does not mention in its ads or on its website that donations are used primarily to send Orthodox Jewish children from NY and NJ to summer camp in in the Catskills.

     b.    The Kars4Kids website says only that donations help provide "the foundation kids need for successful, happy and meaningful lives". It does not mention that its "mentorship" program is exclusively for Orthodox Jewish children.

     c.    Kars4Kids also does not mention in its ads or on its website that it funnels most donations to a group it shares office space with, which invests in real estate, but has lost millions of dollars in donations on failed real estate investments.

     d.    The Kars4Kids website nor its advertising reveals that the largest recipient of Kars4Kids donation funds is another tax-exempt non-profit, Oorah, Inc.

     e.    Oorah's primary programs are summer camps and tuition assistance, and two-thirds of participants and recipients are Orthodox Jewish children from New York and New Jersey.

     f.    Oorah shares an office and shares office staff with Kars4Kids in New Jersey.

     g.    Some Oorah executives are relatives of some Kars4Kids executives.

     h.    Oorah has lost millions of dollars of Kars4Kids donations in failed real estate investments.

    11.    Oorah is a sister charity of Kars-4-Kids (which itself is an arm of "J.O.Y. For Our Youth," which apparently does nothing other than run Kars-4-Kids) and shares management and offices with Kars-4-Kids.

    12.    Oorah receives and disburses almost all the money Kars-4-Kids raises. Oorah runs missionary summer camps and other missionary programs and grants yeshiva scholarships in attempts to convert non-Orthodox Jewish kids to ultra-Orthodoxy but has no non-sectarian purpose or programs.

13. In 2009 Kars-4-Kids settled lawsuits brought by the Attorneys General of Pennsylvania and Oregon alleging Kars-4-Kids advertising was deceptive because it misled donors – mostly non-Jews – about the programs Kars-4-Kids supported by making Kars-4-Kids appear to be a non-sectarian charity that helped poor kids in danger of homelessness, drug abuse and falling into criminal behavior when in actuality almost every penny Kars-4-Kids raised after overhead went to ultra-Orthodox missionary activity directed exclusively to non-Orthodox Jews.

14. Kars-4-Kids settled with each state for tens of thousands of dollars while also agreeing to alter the claims made by its advertising. "According to the Minnesota attorney general, between 2012 and 2014, Kars4Kids raised $3 million in the state through car donations. But less than $12,000, less than one percent of what was raised, went to Minnesota kids. Where does the money go? Ninety percent of the monies donated go to a sister organization, Oorah, a New Jersey-based charity that operates Jewish youth summer camps in "That's fine if people want to raise money for orthodox Jews, but they need to be clear and state that's what the purpose is," Borochoff said. The Minnesota attorney general had other concerns as well. Among them, that the charity lost almost $10 million in real estate transactions." https://www.cbsnews.com/news/kars4kids-charity-misleads-donors-report/

15. "Oorah invested the money and then lost the money. And we think that, too, is something important for people to know," Swanson said. The 2015 budget for their ads? Seventeen million dollars, according to CharityWatch, which is even more than Kars4Kids gave to Oorah. "So when one makes a donation to Kars4Kids, they're basically paying for those ads," Borochoff said. In 2009, Kars4Kids paid settlements in Oregon and Pennsylvania after those states charged the charity with misleading donors. New York." Kars4Kids charity misleads donors report says - CBS This Morning - CBS News.

16.     "My main concern about Kars4Kids is that people don't know what's really happening with this charity," said Daniel Borochoff, the president of CharityWatch. "I think it's important when people donate to a charity, that they have information in terms of where their money is going," said Minnesota Attorney General Lori Swanson. Kars-4-Kids also began small distributions of winter coats in non-Jewish neighborhoods of Newark. The cost of those distributions, including the costs of the coats distributed, are miniscule compared to the money Kars-4-Kids gives Oorah or what it spends on advertising – and miniscule compared to the non-sectarian charity work done by many similar sized charities. For years, Oorah, and its closely affiliated charity Kars4Kids, have faced allegations of financial improprieties. In 2012, the organization — which runs summer camps and provides scholarships to Jewish families — lost a $375,000 federal lawsuit over scholarship money that Oorah allegedly promised (but never gave) to students at the Jewish Foundation School in Staten Island. In 2009, the organization paid tens of thousands of dollars in settlements to the state attorneys general of Pennsylvania and Oregon over its failure to disclose that the funds raised through its vehicle donation program benefited children of a specific religion. In 2010, the New York State Attorney General announced that his office had subpoenaed Joy for Our Youth — the name under which Kars4Kids is incorporated — as part of a broader investigation into charities that accept car donations. Oorah was also caught up in an alleged Ponzi scheme run by Lakewood real estate developer Eliyahu Weinstein in 2010. Weinstein is serving a 22-year federal prison sentence for running a fraudulent real estate investment scheme that caused $200 million in losses. He also allegedly laundered $140 million through a number of Jewish charities, including Kars4Kids, according to news reports.

17.     On the website for J.O.Y. for Our Youth, the entity states "You can donate your car through our program Kars4kids - where you'll have your car towed within 24-72 hours. Kars4kids make the entire car donation process easy and fast. Donate your car and you'll get a

voucher for a 3 day 2 night hotel stay! Children are the hope for the future of the world, yet they are its most vulnerable asset. Changing a child's life for the better is at the heart of Kars4kids agenda. The proceeds from your donated car to Kars for kids will go on and on helping children get a good start in life. Through J.O.Y.'s educational and social services, they grow up to become true assets to their families and communities. Kars for Kids program accepts both functioning and not-quite functioning cars. What does Kars4kids do with the cars? Some of them are resold, some are sold for parts, and all bring in revenues to Kars4kids that are used to pay for food, clothing, education, summer programs and guidance for children from the ages of six to eighteen. Call: 1-877Kars4kids Or visit us at: www.kars4kids.org." <u>Kars4Kids Donate your car to charity | Kars for Kids A Division of JOY (givejoy.org)</u>.

18. "Minnesota Attorney General Lori Swanson is taking aim at Kars4Kids, a New Jersey charity that spent less than 1 percent of the $3 million it raised from Minnesota donors on programs in the state. The charity, one of the largest vehicle donation charities in the country and perhaps best known for its radio jingle, solicits vehicles from donors and raises money by selling and scrapping them. But according to a compliance review issued Thursday by Swanson's office, Kars4Kids spent just $11,600 on charitable programs for Minnesota residents from 2012 to 2014. Swanson questioned Kars-4Kids' bookkeeping, saying that the charity had misstated the amount of money that goes to its mission, and she called into question its transparency. "We are concerned and troubled. Minnesotans are good-hearted. They want to help a good cause," Swanson said. "Donors need accurate and straightforward information to make informed choices." Kars4Kids, which operates in all 50 states, defended its practices and said it made sense to spend most of its money on the East Coast. "Headquartered in the Northeast, many of our programs and recipients naturally come from this area," spokeswoman Wendy Kirwan said in a statement. "As the attorney general's report makes clear, there has never been any question

of diversion of funds from the charity. We believe Minnesota residents understand that charity needs cross state borders and appreciate that their generous donations to Kars4Kids help children both in and out of state." AG sent report to IRS Kars4Kids reports spending 63 percent of its proceeds on its mission, which according to its website includes summer camps and mentorships for children, and school and family programs. According to Swanson, however, only about 44 percent of the $88 million it raised nationally from 160,000 donated vehicles between 2012 and 2014 went to good works. Most of that money, amounting to $40 million, was given to an affiliated nonprofit called Oorah, which promotes Orthodox Judaism among children mostly in New Jersey and New York." https://www.loriswanson.com/minnesota-attorney-general-finds-less-1-percent-donations-kars4kids-charity-goes-minnesota-kids.

19.     "During that time, only one Minnesota child was thought to have benefited from an Oorah program. The attorney general's office forwarded its 300-page report to the Internal Revenue Service, which can revoke the tax-exempt status of a charitable organization. Swanson said she is talking with officials in other states about the findings. Kars4Kids and Oorah share offices in Lakewood, N.J., and many of their employees serve both organizations. Oorah receives the "majority of its budget in the form of grants from Kars4Kids," according to documents obtained by the attorney general's office, and most of its programs are held at boys' and girls' camps in upstate New York. According to the report, Kars4Kids and Oorah lost $9.2 million in failed real estate projects controlled by a second cousin of the charity's president, Rabbi Eliyohu Mintz. Kars4Kids also invested in what turned out to be a Ponzi scheme, according to Swanson's report. Drilling into the books Kars4Kids began running AM radio ads soliciting donations in Minnesota in 2011. At that time, the Star Tribune reported that the nonprofit and its affiliates were in the cross hairs of charity watchdog groups and attorneys general in Oregon and Pennsylvania, which alleged it had misled donors into thinking contributions benefited a broad

group of children and not a "narrow religious purpose." Kars4Kids and affiliate Joy To Our World paid fines in both states and agreed to change some of their advertising practices. CharityWatch, a Chicago-based nonprofit that evaluates and rates other nonprofits, gives Kars4Kids a D grade. "They ought to [say] you are helping proselytize to secular Jews so they can become orthodox," said Daniel Borochoff, president of CharityWatch, who said he is Jewish. "What's even worse is their ad makes it out that they are helping kids in general." When it comes to getting rid of an old, unwanted vehicle, people want convenience and a tax deduction, Borochoff said. "This is why it's allowed to proliferate like this," he said. https://www.loriswanson.com/minnesota-attorney-general-finds-less-1-percent-donations-kars4kids-charity-goes-minnesota-kids.

20. "Swanson's staff of attorneys and forensic accountants spent more than a year pouring through the books for Kars4Kids and Oorah as part of a larger investigation into vehicle donation charities. Complaints and questions from consumers triggered the investigation. "These are laborious investigations; you really have to drill into the books," Swanson said. Notifying the IRS and the public is the heaviest hammer that Swanson said she could bring down on Kars4Kids. She said the U.S. Supreme Court has ruled that charities have free speech rights when it comes to fundraising and how they spend those dollars. "We have given a copy of the compliance report to the charity. We are awaiting their response," Swanson said." https://www.loriswanson.com/minnesota-attorney-general-finds-less-1-percent-donations-kars4kids-charity-goes-minnesota-kids.

21. Charitable organizations are prohibited from misrepresenting the purpose or beneficiary of a charitable solicitation pursuant to Government Code § 12599.6. That statute further provides that charitable organizations:

PRINTED ON
RECYCLED PAPER

- are prohibited from using any unfair or deceptive practices or engaging in fraudulent conduct that creates a likelihood of confusion or misunderstanding;

- are prohibited from misrepresenting that the charitable organization will receive an amount greater than the actual net proceeds reasonably estimated to be retained by the charity for its charitable purposes;

- must establish and exercise control over their fundraising activities; and,

- must assure that their fundraising activities are conducted without coercion.

22. Plaintiff is informed and believes and thereon alleges that Defendants managed, directed and/or executed their solicitation campaigns in a manner that violated state laws and confused and deceived actual and potential donors. Plaintiff is informed and believes and thereon alleges that such defendants authorized misleading solicitation materials that concealed material facts and made false representations as to how Defendants would use the donations. Defendants executed deceptive and fraudulent solicitation campaigns throughout California and obtained donations from hundreds of California residents and others.

23. Plaintiff is informed and believes and thereon alleges that Defendants' unfair or deceptive acts or practices and fraudulent conduct include, but are not limited to, the following:

(a) Defendants represented that they would maximize the proceeds from donated vehicles, control costs, and provide the greatest return for the donor's chosen charity when in fact only a small portion of the sale proceeds were donated to charitable purposes;

(b) Defendants represented that 100 percent of the net proceeds would be donated to children in need, without being advised that all costs associated with operating DEFENDANTS, including rent, postage, electricity, administrative salaries, all payments to all contractors, and other expenses, would be deducted from the sale proceeds from any donation leaving only nominal amounts for charitable purposes.

(c) Defendants represented that the proceeds would be used for all kids when in fact the small amount of proceeds which were not eaten up in "costs" went only to affluent children of a specific religious faith in a limited geographic area.

(d) Defendants hid the material fact that any proceeds not used up in "costs" are used solely to promote Orthodox Judaism among children mostly in New Jersey and New York.

(e) Defendants hid the fact that effectively no children in California benefit from any of Defendants alleged programs.

24. Defendant DOES 1-50, officers and directors of Defendants, at all times owed fiduciary duties of due care and loyalty to the charities under common law trust principles and state statutes including but not limited to Corporations Code § 5231. Plaintiff is further informed and believes, and thereon alleges, that the Defendant DOES 1-50 breached their duties of care and loyalty by engaging in, participating in, aiding and abetting, and facilitating unlawful actions, or omissions, including, including but not limited to:

(a) Causing or allowing Defendants to engage in misleading and deceptive solicitation practices, including the dissemination of false and/or misleading information to potential donors;

(b) Causing or allowing Defendants to conduct solicitation campaigns in violation of Government Code § 12599.6;

(e) Causing or allowing Defendants to engage in unfair competition in violation of Business and Professions Code § 17200; and,

(f) Causing or allowing DEFENDANTS to violate its fiduciary duty to donors to use their charitable contributions for the declared charitable purposes for which they are sought in violation of Business and Professions Code § 17510.8.

PRINTED ON
RECYCLED PAPER

- 11 -

# FIRST CAUSE OF ACTION
# BREACH OF FIDUCIARY DUTY RELATED TO SOLICITATIONS
# IN VIOLATION OF BUSINESS AND PROFESSIONS CODE
# § 17510.8
### (Against All Defendants)

25. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 24.

26. Defendants have a fiduciary relationship with donors from whom they solicit donations. This fiduciary relationship is established by statute, common law, and agreement.

27. DEFENDANTS solicited and received charitable contributions from the general public. The acceptance of those donations established a charitable trust and a fiduciary duty on the part of the Defendants to ensure that donations were used for the purposes stated during the solicitation.

28. Plaintiff is informed and believes and thereon alleges that Defendants breached their fiduciary duty by failing to ensure that donations to Defendants were used for the purposes for which they were solicited. Donors were told in advertisements or orally that their donations would benefit legitimate charitable programs. Plaintiff is informed and believes and thereon alleges that only a nominal amount of the donated funds were used for those charitable purposes. Instead, nearly all the funds solicited were used to pay fundraising or other operating expenses or for the benefit of others.

29. Defendants misled donors to believe that the value of their charitable donations would be maximized and that substantial proceeds would be given to legitimate charitable purposes.

PRINTED ON RECYCLED PAPER

30. As a direct and proximate result of Defendants' violations of their fiduciary duties, Plaintiff and other donors to Defendants are entitled to injunctive and declaratory relief, damages attributable to Defendants breaches, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## UNTRUE OR MISLEADING STATEMENTS IN VIOLATION OF
## BUSINESS & PROFESSIONS CODE § 17500.
### (Against All Defendants)

31. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 30.

32. Plaintiff is informed and believes and thereon alleges that Defendants violated Business and Professions Code § 17500 by:

(a) disseminating, or causing to be disseminated, to the public, untrue and/or misleading statements, including the statements set forth above, regarding services offered by DEFENDANTS and statements connected with DEFENDANTS's fundraising and operating costs, statements which Defendants and each of them knew, or reasonably should have known, were untrue or misleading at the time the statements were made;

(b) representing to donors and the public that 100 percent of "net" proceeds from the sale of their vehicle would be used for charitable purposes.

(c) Defendants failed to disclose that all its operating costs would be deducted from the sale proceeds before any donation would be sent to the chosen charity.

(d) Defendants represented that they would maximize the proceeds from donated vehicles, control costs, and provide the greatest return for the donor's chosen charity when in fact only a small portion of the sale proceeds were donated to charitable purposes;

(e) Defendants represented that 100 percent of the net proceeds would be donated to children in need, without being advised that all costs associated with operating DEFENDANTS,

including rent, postage, electricity, administrative salaries, all payments to all contractors, and other expenses, would be deducted from the sale proceeds from any donation leaving only nominal amounts for charitable purposes.

(f) Defendants represented that the proceeds would be used for all kids when in fact the small amount of proceeds which were not eaten up in "costs" went only to affluent children of a specific religious faith in a limited geographic area.

(g) Defendants hid the material fact that any proceeds not used up in "costs" are used solely to promote Orthodox Judaism among children mostly in New Jersey and New York.

(h) Defendants hid the fact that effectively no children in California benefit from any of Defendants alleged programs.

33. As a direct and proximate result of Defendants' violations of their fiduciary duties, Plaintiff and other donors to Defendants are entitled to injunctive and declaratory relief, damages attributable to Defendants breaches, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## UNFAIR COMPETITION IN VIOLATION OF
## BUSINESS AND PROFESSIONS CODE § 17200
### (Against All Defendants)

34. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 33 of this Complaint.

35. Plaintiff is informed and believes and thereon alleges that Defendants violated Business and Professions Code § 17200 by making false, deceptive, and misleading statements to donors to induce them to make charitable contributions to DEFENDANTS. Defendants. committed and continue to commit acts of unfair competition including, but not limited to, the following:

(a) Misrepresenting, explicitly or implicitly, the percentage or amount of charitable

contributions that would go to the donor's designated charity;

(b)     Misrepresenting, explicitly or implicitly, the percentage or amount of charitable contributions that would be used for charitable programs;

(c)     Misrepresenting the charitable purposes of Defendants;

(d)     Misrepresenting how and where charitable donations would be used;

(e)     Misrepresenting that towing for the vehicle was free;

(f)     Breaching their fiduciary duty to donors, their charitable beneficiaries, and the public by failing to ensure that the donations were used for the purposes for which they were solicited;

(g)     Using donations for purposes other than the purposes for which the donations were donated; and,

(h)     Violating Vehicle Code § 286.

36.     Defendants, in engaging in and participating in the acts of unfair competition- as alleged in paragraphs 23 and 29, violated the following statutes:

(a)     Government Code § 12586;

(b)     Government Code § 12591.1;

(c)     Government Code § 12599.6;

(d)     Business and Professions Code § 17500;

(e)     Business and Professions Code § 17510.8;

(f)     Corporations Code § 5231;

(g)     Corporations Code § 5237;

(h)     Corporations Code § 6215;

(i)     Corporations Code § 6320;

(j)     Vehicle Code § 286; and

PRINTED ON RECYCLED PAPER

(k)     Vehicle Code § 11701.

37.     As a result of these violations and unlawful, unfair, and fraudulent business practices, Plaintiff and others suffered injury in fact and lost money, including but not limited to lost value of of the donated vehicles donated at less than value because of the misrepresentations as to the charitable nature of the donation and the programs offered by Defendants.

38.     Pursuant to California Business and Professions Code § 17200 *et seq.*, Plaintiff and the Class Members are entitled to enjoin the practice of Defendants acting in an irresponsible, misleading and unfair manner as set forth herein, and grant such other and further relief as the Court may deem proper and just.

39.     Pursuant to Code of Civil Procedure § 1021.5, Plaintiff is entitled to recover reasonable attorney's fees, costs, and expenses incurred in bringing this action.

**PRAYERS**

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.     For a permanent injunction, enjoining Defendants, their employees, agents, servants, representatives, successors, and assigns, any and all persons acting in concert or participation with them, and all other persons, corporations, or other entities acting under, by, through, or on their behalf, from doing any of the following until they have first provided a full and complete accounting for all funds received by, and disbursed from any and all financial accounts of Defendants from its inception to the present: (1) expending, disbursing, transferring, encumbering, withdrawing or otherwise exercising control over any funds received by or on behalf of Defendants or rightfully due Defendants except as authorized by the Court; (2) conducting business of any kind on behalf of, or relating to Defendants other than as necessary to assist with dissolution; and (3) controlling or directing the operations and affairs of any California nonprofit public benefit corporation;

2. That an order issue directing that Defendants and each of them, render to the Court and to the Attorney General a full and complete accounting of the financial activities and condition of Defendants from their inception to the present, to include the expenditure and disposition of all revenues and assets received by or on behalf of Defendants. Upon the rendering of such accounting, that the Court determine the property, real or personal, or the proceeds thereof, to which Defendants and the charitable beneficiaries thereof are lawfully entitled, in whatsoever form in whosoever hands they may now be, and order and declare that all such property or the proceeds thereof is impressed with a trust for charitable purposes, that Defendants are constructive trustees of all such charitable funds and assets in their possession, custody or control, and that the same shall be deposited forthwith in Court by each and every Defendant now holding or possessing the same or claiming any rights, title or interest therein. In addition, that these Defendants be surcharged and held liable and judgment entered against each of them for any and all such assets for which they fail to properly account, together with interest thereon at the legal rate from the date of liability thereon; and that any and all expenses and fees incurred by Defendants in this action be borne by the individual defendants and each of them and not by Defendants or any other public or charitable corporation or fund;

3. For damages resulting from Defendants' breaches of fiduciary duty in an amount to be determined following an accounting, but believed to be in excess of $3 million, plus interest at the legal rate until the judgment is paid;

4. For punitive and exemplary damages against Defendants according to proof;

5. That the Court assess civil penalties against all Defendants pursuant to Government Code § 12591.1 for violations of the Supervision of Trustees and Fundraisers for Charitable Purposes Act (Gov. Code§ 12580 et seq.) as proved at trial;

PRINTED ON RECYCLED PAPER

6.  Pursuant to Business and Professions Code § 17206, that the Court assess a civil penalty of two thousand five hundred dollars ($2,500) against Defendants for each violation of Business and Professions Code § 17200, as proved at trial, in an amount not less than $100,000;

7.  Pursuant to Business and Professions Code § 17536, that the Court assess a civil penalty of two thousand five hundred dollars ($2,500) against Defendants for each violation of Business and Professions Code § 17500, as proved at trial, in an amount not less than $100,000;

8.  Pursuant to Business and Professions Code § 17206.1, Defendants and each of them be ordered to pay a civil penalty of $2,500 for each violation of Business and Professions Code § 17200 that was perpetrated against a senior citizen or disabled person, as proved at trial;

9.  Pursuant to Business and Professions Code § 17203, for a permanent injunction enjoining Defendants, their successors, agents, representatives, employees and all persons who act in concert with, or on behalf of, defendants from engaging in unfair competition as defined in Business and Professions Code § 17200, including, but not limited to, those acts and omissions alleged in this Complaint;

10. That the Court order the involuntary dissolution of DEFENDANTS pursuant to the provisions of Corporations Code § 6518, and establish a procedure for determining the disposition of DEFENDANTS's assets in a manner consistent with their charitable purposes and consistent with any lawful restrictions that have been placed upon any of their remaining assets;

11. That the Court order the permanent removal of the defendants pursuant to the provisions of Corporations Code § 5223.

12. Plaintiff be awarded costs of suit therein.

13. Plaintiff be awarded compensatory damages according to proof.

14. That the Court grants Plaintiff any additional awards as it finds just and proper.

Dated: August 18, 2021

Respectfully Submitted,

_____
Anthony G. Graham
Attorneys for Plaintiff
BRUCE PUTERBAUGH